# United States District Court
### Northern District of California

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.: CR-13-00813-YGR (KAW) |
| Plaintiff, | |
| v. | DETENTION ORDER |
| LARRY DARNELL GOINES, JR., | |
| Defendant. | |

## I.  BACKGROUND INFORMATION

Defendant Larry Darnell Goines, Jr. is charged by indictment with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).

Pretrial Services prepared a full bail study.  On February 5, 2014, the Court conducted a detention hearing.  Defendant was present, in custody, and represented by Assistant Federal Public Defender Angela Hansen.  Assistant United States Attorney Manish Kumar appeared on behalf of the Government.  For the reasons stated below, the court orders that Defendant be detained.

## II.  LEGAL ANALYSIS

The Bail Reform Act requires that in a pretrial posture, the government bears the burden of proving that a defendant poses a risk of flight and/or a danger to the community that cannot be mitigated through the imposition of conditions of release.  If the government does not meet its burden, the court's duty is to fashion appropriate conditions that permit the defendant to remain out of custody during the preparation of his or her defense, while safeguarding against flight or danger to the community.  Close cases should result in release: "[t]o give effect to the principle that doubts regarding the propriety of release be resolved in favor of the defendant, the court is to

United States District Court
Northern District of California

1    rule against detention in close cases." *United States v. Chen*, 820 F. Supp. 1205, 1208 (N.D. Cal.

2    1992) (Walker, J.) (citing *United States v. Motamedi*, 767 F.2d 1403, 1405-06 (9th Cir. 1985)).

3          A person facing trial generally shall be released if some "condition, or combination of

4    conditions . . . [can] reasonably assure the appearance of the person as required and the safety of

5    any other person and the community."  18 U.S.C. § 3142(c).  In non-capital cases, pretrial release

6    should be denied "[o]nly in rare circumstances."  *Motamedi,* 767 F.2d at 1405; *see also United*

7    *States v. Salerno*, 481 U.S. 739, 755 (1987) (upholding constitutionality of Bail Reform Act; "[i]n

8    our society liberty is the norm, and detention prior to trial or without trial is the carefully limited

9    exception").  Bail hearings generally proceed by proffer, and the rules of evidence do not apply.

10   18 U.S.C. § 3142(f).  At the hearing, the court determines whether any conditions in section

11   3142(c) will reasonably assure the defendant's appearance and the safety of the community or

12   another person.  *Id.*  The Bail Reform Act "mandates release of a person facing trial under the

13   least restrictive condition or combination of conditions that will reasonably assure the appearance

14   of the person as required." *Motamedi*, 767 F.2d at 1405.

15         In evaluating whether pretrial release is appropriate, a court must consider  (1) the nature

16   and circumstances of the offense, (2) the weight of the evidence, (3) the history and

17   characteristics of the person (including his character, physical and mental condition, family ties,

18   employment, financial resources, length of residence in the community, community ties, past

19   conduct, history relating to drug and alcohol abuse, criminal history, or record concerning

20   appearance at court proceedings), and (4) the nature and seriousness of the danger to any person

21   or the community posed by the person's release.  18 U.S.C. § 3142(g); *Motamedi*, 767 F.2d at

22   1407.

23         **A.  The Nature and Circumstances of the Offense and Weight of the Evidence**

24              1.   Nature and Circumstances of the Offense

25         Defendant is charged with being a felon in possession of a firearm in violation of 18

26   U.S.C. § 922(g)(1). According the Special Agent Matthew Ernst with the FBI, Defendant and his

27   girlfriend, Ms. Gattis, were stopped in a vehicle, and a revolver was discovered under the seat.

28   According to the attorney for the government, Ms. Gattis was 9 months pregnant and 3 days

DETENTION ORDER

overdue. Defendant and Ms. Gattis had been engaged in a loud argument. The gun found in the car was loaded and found under the passenger seat and had an obliterated serial number. Ms. Gattis had been cited and released earlier that day after being stopped in a vehicle in which an assault rifle was found.

        2.   Weight of the evidence

As to the weight of the evidence, while this is the least important factor, Defendant was found with a loaded firearm in a vehicle, and he has 6 prior felony convictions, one of which was for being a felon in possession of a firearm.  Thus, the nature and circumstances of the offense and the weight of the evidence weigh in favor of detention.

**B.**  **The History and Characteristics of the Defendant and the Nature and Seriousness of the Danger to Any Person or the Community**

Defendant is 28 years old and has lived in Pittsburg, California since 2008 with his parents, Letha Hackett and Larry Goines, Sr. He is married to Jamila Goines, but separated from her shortly after the marriage, and they have one child together. He has two children with Victoria Benitez, and one relatively newborn child with Ms. Brittney Gattis.  Defendant obtained his GED in 2008 and attended a Heating, Ventilation, and Air Conditioning (HVAC) certification program at Wyotech from 2010 to 2011. Defendant advised that he has been unemployed since 2012. He unloaded trucks for a temporary agency in 2012, worked as an aluminum fabricator for Vista Wall from 2007-2008, and worked at McDonald's in 2001.  Defendant reported that he is in good physical and mental health and does not consume alcohol. He started using marijuana when he was 20 years old and uses it once per month.

Defendant's criminal history began in 2002 when he was arrested as a juvenile for assault with a deadly weapon. In 2003, he was convicted of attempt to receive known stolen property (felony) and sentenced to 36 months of probation and 120 days in jail.  In 2005, he was convicted for driving without a license (misdemeanor). In 2008, Defendant was convicted for possession of a narcotic controlled substance (felony) and sentenced to 240 days in jail and 3 years of probation. In that same case he was convicted or being a felon in possession of a firearm (felony) and for making a false bomb report (misdemeanor). In 2009, he was convicted for transporting or selling

United States District Court
Northern District of California

1   a controlled substance (felony) and for giving false identification to peace officers

2   (misdemeanor). He was sentenced to 3 years of probation and 90 days in jail. In 2011, he was

3   convicted for possession of a controlled substance (felony) and sentenced to 3 years of probation

4   and 60 days in jail. In 2012 the defendant was convicted for possession of marijuana for sale

5   (felony) and sentenced to 3 years of probation, 90 days in jail and a firearm restriction. Now,

6   Defendant is facing a new charge in this court for being a felon in possession of a firearm.

7        Defendant has also incurred numerous arrests. Some of his arrests and convictions,

8   including the arrest in this case, occurred while Defendant was on community supervision.

9   Currently, the defendant is on active felony probation in Contra Costa County, and violation

10   proceedings are pending. According to Deputy Probation Officer Robert Camp, Defendant is on

11   probation for both the 2011 and 2012 drug related felony convictions. He also advised that

12   Defendant incurred his first probation violation on April 18, 2012 by failing to comply with court

13   ordered substance abuse counseling.

14        Defendant proposed his mother, father, sister, and Ms. Gattis, the mother of his child, as

15   sureties, but the court found that none of them were suitable to mitigate the risk of danger to the

16   community.  None of the sureties had money or property to post, but were willing to co-sign an

17   unsecured appearance bond.  As mentioned above, Ms. Gattis was in the car where the gun was

18   found at the time of Defendant's arrest in this case, and earlier that day, she had been cited and

19   released after being stopped in a vehicle in which an assault rifle was found. Although Ms. Gattis

20   has no criminal history, this information is troubling to the court.

21        In addition, Defendant's father, Larry Goines, Sr., with whom Defendant has been residing

22   since 2008, was not completely honest with Pretrial Services when he was interviewed. He

23   reported that he has been arrested on two occasions a long time ago for driving under the

24   influence. To the contrary, Mr. Goines, Sr. has a lengthy criminal history, from 1987 to 2006,

25   which includes numerous arrests and multiple misdemeanor and felony convictions in addition to

26   the DUI convictions to which he admitted. As such, Mr. Goines would not be a suitable surety on

27   an unsecured appearance bond.

28

United States District Court
Northern District of California

Defendant's sister, Brianne Goines, has a minor criminal history, including a petty theft offense for which she was given diversion and has now resolved according to defense counsel and an outstanding traffic warrant.

Given, Defendant's criminal history, the nature of his prior convictions and the fact that one of his prior convictions is for being a felon in possession of a firearm – the same charge he is now facing, Defendant's plan to live with his parents or go to a halfway house, and have his proposed sureties sign an unsecured appearance bond, is not sufficient to mitigate the risk of danger to the community. Therefore, the court finds that there is no condition or combination of conditions that could be imposed to mitigate the risk of danger to the community.

**C. Risk of Nonappearance**

Factors that indicate Defendant poses a risk of nonappearance include his prior conviction for giving false identification to a peace officer, his previous probation violation for failure to comply with court ordered substance abuse counseling, lack of employment and sparse employment history and substance abuse issues.  Mitigating factors include his lifelong residence in the San Francisco Bay Area, familial ties to the district, and lack of international travel.

With sufficient sureties, there may be conditions or a combination of conditions that could be imposed that would mitigate the risk of nonappearance.

**III.   CONCLUSION**

In light of Defendant's criminal history, the nature of the instant offense, and the weight of the evidence, the Court finds that Defendant presents a danger to the community and that there is no condition or combination of conditions that will reasonably assure the safety of any other person or the community.

For the reasons set forth above, Defendant shall remain committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal.  Defendant shall be afforded reasonable opportunity for private consultation with counsel.  On order of a court of the United States or on request of an attorney for the Government, the person in charge of the

corrections facility in which Defendant is confined shall deliver Defendant to a United States marshal for the purpose of an appearance in connection with a court proceeding.

     IT IS SO ORDERED.

DATED: February 6, 2014

KANDIS A. WESTMORE
United States Magistrate Judge